Francisco Sánchez Cordero, demandante y apelado, *v.* Víctor Coll Cintrón y su esposa Carmen Pérez, demandados y apelantes.

Núm. 9844.—*Sometido:* Abril 8, 1949. *Resuelto:* Abril 22, 1949.

*Cayetano Coll Cuchí*, abogado de los apelantes; *Baldomero Roig Vélez* y *Artemio P. Rodríguez*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Por escritura pública otorgada el 21 de mayo de 1946 Víctor Coll Cintrón y esposa vendieron a Francisco Sánchez Cordero y esposa un solar de 148 metros cuadrados de superficie, conteniendo una casa terrera, de madera, en el pueblo de Cataño. Se hizo constar en la escritura que la propiedad estaba libre de cargas y gravámenes; que la venta se efectuaba por el convenido precio de $900 y que los vendedores se obligaban al saneamiento en caso de evicción.

En 13 de mayo del siguiente año Sánchez Cordero instó ante la Corte de Distrito de Bayamón demanda de daños y perjuicios contra Coll Cintrón y esposa. Alegó en ella que a los pocos días de haberse otorgado la referida escritura él descubrió que la finca objeto del contrato estaba *inscrita a nombre de anteriores dueños, con descripción distinta a la que figuraba en la escritura otorgada a su favor;* que en el Registro de la Propiedad aparecía que la finca por él adquirida estaba hipotecada a favor de un tercero por la suma de $450 de principal, con intereses al 1 por ciento mensual, más un crédito adicional de $50 para intereses y otro de $75 para gastos, costas y honorarios de abogado; que en pleito sobre cobro del indicado crédito hipotecario por la vía ordinaria se sentenció a los allí demandados a pagar al acreedor $744 de principal, más intereses y $75 para gastos, costas y honorarios de abogado; que en otro caso civil

iniciado posteriormente en cobro de la sentencia dictada en el pleito sobre crédito hipotecario, se ordenó la venta en pública subasta de la finca con el objeto de hacer efectiva al allí demandante la suma de $819; que al anunciarse la subasta de la propiedad él corría el riesgo de sufrir graves daños, por lo que en 17 de abril de 1947 pagó al acreedor la suma total de $892.50 para cubrir el importe de la sentencia, los intereses legales y las costas, procediendo entonces el acreedor a cancelar mediante escritura pública el aludido crédito hipotecario; y que desde que se hizo el contrato de compraventa los demandados se han negado a saldar la deuda hipotecaria indicada, ocasionando ello al demandante daños y perjuicios ascendentes a $900.

Contestaron los demandados y alegaron como defensa especial que ante la misma corte el demandante presentó otra demanda contra ellos solicitando la rescisión del contrato en cuya virtud los demandados le habían vendido la finca urbana a que se hace referencia en la demanda por el precio de $1,400, aunque la escritura que evidenciaba el contrato fijaba la suma de $900; que el demandante desistió de dicha demanda y radicó la actual de daños y perjuicios; y que aunque por la escritura de 21 de mayo de 1946 se hacía constar que los demandados vendieron al demandante la finca urbana a que se refiere la demanda por $900, el convenio antes del otorgamiento de la misma fué que el valor del inmueble sería $1,400, quedando la diferencia en poder del demandante para éste satisfacer el gravamen que pesaba sobre la finca y pagar los gastos de inscripción; y que ellos no han causado daño alguno al demandante.

Trabada así la contienda, fué el pleito a juicio. Al surgir de la propia prueba del demandante que si bien en la escritura se hacía constar que el precio pagado por la propiedad fué $900, lo cierto era que el demandante y su esposa pagaron por ella $1,400 y que se consignó tan sólo la can-

tidad de $900 "con el fin de evitar el pago de contribuciones", los demandados solicitaron de la corte declarara sin lugar la demanda por haber acudido el demandante a la corte con una transacción que envuelve fraude al erario público. La resolución dictada por la corte declarando sin lugar esa moción ha sido objeto del primer señalamiento de errores.

 La regla general, indudablemente, es que un contrato otorgado en violación de la ley es una nulidad y que los contratantes no pueden exigir el cumplimiento del mismo. Artículo 4, Código Civil, ed. 1930; *Embrey* v. *Jemison,* 131 U.S. 336, 33 L. ed. 172, 177. Empero, si bien es cierto que en este caso la prueba demuestra que se hizo constar en la escritura una suma menor que aquélla que en realidad servía de causa al contrato, no puede decirse por ese solo hecho que dicha causa fuera ilegal y, por ende, que el contrato sea nulo, *Latorre* v. *Cruz,* 67 D.P.R. 743; *Ríos* v. *Amorós et al.,* 27 D.P.R. 804. Cf. *González Rodríguez* v. *Fumero,* 38 D.P.R. 556. Al fijarse una suma menor como causa, el propósito fué tratar de lograr que la propiedad se tasara más tarde por el Tesorero de Puerto Rico en una suma que diera derecho a los adquirentes a disfrutar de la exención provista por el artículo 291 del Código Político, según el mismo fué enmendado por la Ley núm. 27 de 12 de abril de 1941 (pág. 457([1]). (Al tasar propiedades el Tesorero hace naturalmente su propia valoración de las mismas y el precio estipulado por las partes en una escritura no es, en manera alguna, obligatorio ni decisivo para dicho funcionario.) Al así procederse se violó también la sección 2 de la Ley núm. 101 de 12 de mayo de 1943 (pág. 279), que especifica los sellos de rentas internas a ser cancelados en los originales y copias

---

([1])Dispone el artículo 291 del Código Político, en lo aquí pertinente que "estará exenta de tributación para la imposición de contribuciones toda propiedad en la cual el dueño, siendo jefe de familia, tenga constituído su hogar seguro (*homestead*), siempre que sus bienes, en su valor total, sean tasados en menos de mil (1,000) dólares."

de toda escritura pública.(²) La cuestión a determinarse es, pues, si a pesar de la existencia de esas ilegalidades, **pueden exigirse por una de las partes a la otra daños y perjuicios por la violación del contrato.**

██ El Tribunal Supremo de los Estados Unidos, por voz del Juez Asociado Sr. Brandeis, en *Loughran* v. *Loughran,* 292 U.S. 216, 78 L. ed. 1219, 1226, (reconsideración denegada, 78 L. ed. 1474), al interpretar un caso en que estaba envuelta una ilegalidad, manifestó en el curso de su opinión que cuando en esa clase de pleitos la ilegalidad alegada es inherente a la causa de acción y está relacionada directamente con el remedio solicitado, la misma constituye una defensa fundamental, pero que cuando la relación de la ilegalidad con el remedio solicitado es indirecta y remota, el daño relacionado es cosa del pasado y colateral; que en los innumerables casos que han seguido el de *Connolly* v. *Union Sewer Pipe Co.,* 184 U.S. 540, 46 L. ed. 679, ha quedado establecido que la ilegalidad no constituye defensa si la misma es meramente colateral a la causa de acción entablada y que una persona no se coloca al margen de la ley ni pierde todos sus derechos al realizar un acto ilegal. Véanse también *National Bank & Loan Co.* v. *Petrie,* 189 U.S. 423, 47 L. ed. 879; 12 Am. Jur., pág. 718, sec. 211 y casos citados.

En el presente caso, al igual que en los citados, la relación de la ilegalidad con el remedio solicitado es indirecta y remota. Es colateral al contrato celebrado entre las partes.

---

(²)La sección 2 de la Ley 101 de 1943, se lee en parte así:

‘‘En cada documento e instrumento original, autorizado por notario público, que haya de ser protocolizado, y sus copias, se fijarán y cancelarán en sellos de rentas internas de los siguientes valores o denominaciones:

‘‘ . . . . . . . . .

‘‘ . . . . . . . . .

‘‘ (c) Cuando la cuantía exceda de $500 y no pase de $1,000, un dólar original y cincuenta centavos por cada copia.

‘‘ (d) Cuando la cuantía exceda de $1,000 y no pase de $5,000, un dólar por los primeros $1,000 y veinte y cinco centavos adicionales por cada mil dólares o fracción de mil dólares por el original; y cincuenta centavos por los primeros mil dólares y diez centavos adicionales por cada mil dólares o fracción de mil dólares por cada copia.’’

La fijación de un precio inferior al real convenido no anula el contrato entre ellos celebrado. Al que afectaba era al Tesoro público. La acción no se dirige, sin embargo, contra el erario. Tampoco versa sobre la tasación de la propiedad vendida, ni sobre los derechos de arancel a ser cancelados en el original de la escritura y su copia. No hay en verdad razón para que la ilegalidad indirecta y remota existente convierta en una nulidad el contrato celebrado entre las partes. No se ha cometido el primer error señalado.

■ Sostienen también los demandados que la corte inferior cometió error al declarar con lugar la demanda. En su sentencia la corte condenó a los demandados a pagar al demandante la suma de $892.50 en concepto de daños y perjuicios, más las costas y $100 para honorarios de abogado.

De acuerdo con el artículo 1372 del Código Civil (ed. 1930):

"Si la finca vendida estuviese gravada, sin mencionarlo la escritura, con alguna carga o servidumbre no aparente, de tal naturaleza que deba presumirse no la habría adquirido el comprador si la hubiera conocido, podrá pedir la rescisión del contrato, a no ser que prefiera la indemnización correspondiente.

"Durante un año, a contar desde el otorgamiento de la escritura, podrá el comprador ejercitar la acción rescisoria, o solicitar la indemnización. Transcurrido el año, sólo podrá reclamar la indemnización dentro de un período igual, a contar desde el día en que haya descubierto la carga o servidumbre."

Manifestamos en *Mejía* v. *Mouriño*, 68 D.P.R. 661, 663, que "Interpretando el artículo correspondiente del Código Civil Español, el 1483, dice Manresa que si el gravamen o la servidumbre no aparente estuviesen inscritos en el Registro de la Propiedad, el comprador pudo conocer perfectamente el estado del inmueble vendido y si sufre perjuicios, debe imputárselos a su propia negligencia." Y que "Agrega dicho autor que . . . cuando consta el gravamen del Registro, el comprador no tendrá derecho ni a la rescisión del contrato ni a pedir indemnización de ninguna especie. Manresa, Co-

mentarios al Código Civil Español, t. 10 (2da. ed. 1908), pág. 221. Véanse, al mismo efecto, Scaevola, Código Civil, t. 23, pág. 599, y la Sentencia del Tribunal Supremo de España de 8 de abril de 1903, Jur. Civil, t. 95, págs. 597, 614." Ese caso, aparentemente, da la razón a los demandados. Pero en el presente se hace necesario determinar el efecto que pueda tener el haberse hecho constar en la escritura que la propiedad no estaba inscrita. Nos dice a este respecto el mismo tratadista, refiriéndose al artículo 1483 del Código Civil Español, ya citado, que:

"Asegurando el vendedor, bajo su responsabilidad, que las fincas se hallaban libres de cargas y que se obligaba a la evicción, con enmienda de daños, pago de costas e indemnización de perjuicios, tales cláusulas constituyen un pacto perfecto sobre materia lícita que da acción al comprador para exigir el saneamiento de la cosa vendida por los gravámenes inscritos a que el inmueble estuviese afecto; pues demuestra que el ánimo del vendedor fué reparar el daño que sobreviniera al comprador, excusándole de poner en práctica, fiado en la responsabilidad personal de aquél, las investigaciones que, en defecto de pacto expreso, regula el derecho positivo (sentencia de 5 de enero de 1916)." (135 Jur. Civil 20). Manresa, Obra citada, tomo X, ed. 1931, pág. 207.

Estamos enteramente de acuerdo con el anterior comentario del ilustre tratadista. Si el vendedor expresamente asegura al comprador en la escritura de compraventa que la finca objeto del contrato está libre de cargas y que responderá del saneamiento en caso de evicción, no vemos razón alguna por la cual el adquirente quede obligado por una inscripción en el Registro de la Propiedad, especialmente cuando la finca figura inscrita a nombre de otra persona y con descripción distinta.

La prueba testifical y documental aducida demuestra que los daños alegados fueron sufridos por el demandante y la corte inferior actuó acertadamente al declarar con lugar la demanda.

932

De existir en Puerto Rico una ley declarando nulo y sin valor alguno todo contrato en que con el objeto de evadir el pago de cualesquiera contribuciones o los derechos del arancel notarial los contratantes hagan constar una causa falsa, otro sería, desde luego, el resultado. Pero tal ley no existe, y a las cortes sólo incumbe aplicar e interpretar las leyes tal como las encuentran. Si debe o no existir semejante ley es cuestión que no nos atañe.

*Debe confirmarse la sentencia apelada.*