ANTONIO MIRALLI, ETC., demandante y recurrido, *v.* FULLANA CORPORATION, demandada y recurrente.

*Número:* R-69-104     *Resuelto:* 30 de enero de 1970

*Rodríguez Ema, Rodríguez Ramón, Benítez Gautier & Segarra* y *José Antonio Luiña*, abogados de la recurrente; *Augusto Quiñones Guardiola* y *José Bravo Abreu*, abogados de los demandantes.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Amparándose en las disposiciones del Art. 1372 del Código Civil, 31 L.P.R.A. sec. 3840, [1] los esposos compradores Antonio Miralli y Providencia Fernández incoaron una acción contra la vendedora Fullana Corporation en solicitud de indemnización, por estar gravada la finca vendida con una servidumbre de alcantarillado inmencionada en la escritura de compraventa. El Tribunal Superior, Sala de San Juan, declaró con lugar la demanda y condenó a la demandada a satisfacer a los demandantes la suma de diez mil dólares por

---

[1] "Si la finca vendida estuviese gravada, sin mencionarlo la escritura, con alguna carga o servidumbre no aparente, de tal naturaleza que deba presumirse no la habría adquirido el comprador si la hubiera conocido, podrá pedir la rescisión del contrato, a no ser prefiera la indemnización correspondiente.

"Durante un año, a contar desde el otorgamiento de la escritura, podrá el comprador ejercitar la acción rescisoria, o solicitar la indemnización. Transcurrido el año, sólo podrá reclamar la indemnización dentro de un período igual, a contar desde el día en que haya descubierto la carga o servidumbre."

indemnización. A solicitud de la corporación demandada expedimos auto de revisión.

De las determinaciones de hecho del tribunal de instancia y de la prueba documental ofrecida y admitida [2] surgen como hechos indisputables los siguientes: (i) Que en 26 de septiembre de 1960 las partes suscribieron un documento privado denominado "contrato de promesa bilateral de compra y venta" con relación al solar núm. 203 del bloque S de la Urbanización Las Américas, "según aparece dicho solar delineado y numerado en un plano levantado por la CORPORACIÓN", en el cual los compradores manifestaron "(i) *haber examinado el plano mencionado en la descripción del solar descrito* . . . ; [3] (ii) . . . ; (iii) conocer el lugar y sitio de ubicación de la Urbanización Las Américas; y (iv) tener conocimiento de todos aquellos otros hechos propios para una determinación del objeto de este contrato" Exh. 3, Dte.) ; (ii) que en el Registro de Planos del Registro de la Propiedad de Río Piedras se archivó un plano de inscripción parcial para la Urbanización Las Américas, según el informe 61-L-1281 de la Junta de Planificación certificado en *19 de diciembre de 1960*, aprobándose la segregación, entre otros, de los solares 200 al 208, ambos inclusive, del bloque S; [4]

---

[2] No se elevó la transcripción de evidencia testifical. A los fines de la resolución del recurso nos atendremos a las determinaciones de hecho del juez a quo y *a la evidencia documental que obra en autos.*

[3] Se refiere a un plano de inscripción condicional que fue admitido como Exh. 2 de la parte demandante. En dicho plano aparece el solar 203 del bloque S con idéntica cabida a la que se hace constar en el "contrato de promesa bilateral de compra y venta."

[4] El Art. 24 de la Ley de Planificación, 23 L.P.R.A. sec. 25, que crea el Registro de Plano de Lotificación en cada una de las demarcaciones registrales, dispone que los planos finales de lotificación—que por definición incluye la urbanización de terrenos, Art. 2, 23 L.P.R.A. sec. 2—se inscribirán en dicho registro. En relación con los planos de inscripción, véanse, 23 R.&R.P.R. sec. 10-41, sec. 10-42 (planos de inscripción parciales) y sec. 10-44. El inciso (b) de la sec. 10-44 dispone que "Cualesquiera restricciones y servidumbres exigidas por la Junta para la lotificación, una vez aprobadas, serán inscritas como parte que son de los planos de inscripción . . . ."

(iii) que en dicho plano "se indica el trazado de una servidumbre de cinco metros a favor de P.R.A.S.A.([5]) que afecta a los solares números . . . doscientos tres . . . del Bloque S . . ." (Exh. 1, Dte.) ; (iv) que mediante la escritura núm. 138 de *15 de febrero de 1961* ante el Notario Miguel Marcos Contreras los esposos demandantes adquirieron por compra a Fullana Corporation el solar a que se ha venido haciendo referencia y la edificación que en el mismo enclavaba por precio de $19,733.80, practicándose la correspondiente inscripción en 2 de junio de 1961; (v) que en la relación de cargas sólo se hizo constar que estaba afecta a condiciones restrictivas de edificación, una servidumbre a favor de la Autoridad de las Fuentes Fluviales y a una hipoteca a favor del Banco Crédito y Ahorro Ponceño (Exh. 2, Dte.) ; ([6]) (vi) que por resolución dictada en 24 de enero de 1963 en el caso E-63-193, el Estado Libre Asociado adquirió mediante expropiación para beneficio de la Autoridad de Acueductos y Alcantarillados de Puerto Rico una servidumbre perpetua de acceso y acueducto para la construcción de alcantarillado sanitario sobre una faja de terreno de la finca principal, que se inscribió en *20 de marzo de 1964* (Exh. 1, Dte.) ; ([7]) (vii) que en agosto de 1965 empleados de la Autoridad de Acueductos y Alcantarillados levantaron al nivel del terreno un registro de poco más de un metro de diámetro

---

([5]) Siglas que significan Puerto Rico Aqueduct and Sewage Administration.

([6]) Éstos fueron los mismos gravámenes que se mencionaron en la exposición de la escritura. En el otorgamiento se verificó la trasmisión del inmueble, "libre de cargas, a excepción de la servidumbre y condiciones restrictivas de urbanización relacionadas y que conoce el Comprador."

([7]) El predio sirviente se describió así: "Urbana: Franja de terreno radicada en el Barrio Monacillos del término municipal de Río Piedras, San Juan, Puerto Rico, con una superficie de 0.105 milésimas de cuerda, equivalentes a 414.051 metros cuadrados; en lindes, por el Norte y Oeste, con más terreno de la finca principal; por el Oeste en parte con la finca principal; por el Este en parte con la finca principal y con el cauce del Río Piedras, y por el Sur, con la Carretera Estatal núm. 41."

hasta entonces oculto en el solar de los demandantes con el propósito de limpiar una troncal de alcantarillado que estaba obstruida; (viii) que dicha troncal de veinticuatro pulgadas de diámetro se encontraba sepultada a trece pies de la superficie y atraviesa en parte la colindancia norte de dicho solar; y, (ix) que ni antes ni a la fecha en que se otorgó la compraventa los demandantes fueron "informados" por la demandada de que el inmueble estaba gravado por una servidumbre de alcantarillado a favor de la Autoridad de Acueductos y Alcantarillados.

En sus conclusiones de derecho el tribunal de instancia se refirió a: (1) la presunción de la libertad de cargas y a la obligación del demandado en una acción negatoria de servidumbre de establecer como defensa la existencia de la misma; (2) el carácter de continua y no aparente de la servidumbre de alcantarillado; y, (3) la obligación de resarcimiento por la vendedora "por la existencia de la troncal, el registro y los tubos de alcantarillado ocultos bajo la superficie del inmueble . . . sin ningún signo ostensible o indubitado que revelase su existencia, [lo que] constituye una servidumbre no aparente de la cual tenía y tiene conocimiento la demandada, pero, sin embargo, no hizo mención de ella en la escritura de compraventa . . . ."

1. Precisa advertir, de inmediato, que es extraña a la controversia toda referencia a la libertad de gravámenes y a la obligación consiguiente del demandado en una acción negatoria de servidumbre de establecer la existencia de la servidumbre. Ni las alegaciones ni la prueba lo justificaban, pues el quebrantamiento contractual que se intenta remediar nace claramente de la relación de comprador y vendedor de las partes. Más aún cuando se considera que la acción negatoria debe dirigirse contra el alegado titular de la servidumbre que en este caso se reconoce es la Autoridad de Acueductos y Alcantarillados, y no la corporación demandada.

■ 2. Los requisitos de la acción a que hace referencia el Art. 1372 del Código Civil, *supra*, según expusimos en *Pagán Rosell* v. *Sucn. Rivera Vélez*, 38 D.P.R. 649 (1928), son: (i) *la existencia* de una servidumbre no aparente; (ii) su falta de manifestación en la escritura; y, (iii) la circunstancia de que de haberse conocido el gravamen el comprador no habría adquirido la finca. (⁸) Se deriva de la obligación de saneamiento del vendedor y se dirige a garantizar la posesión pacífica de la cosa vendida, oponiéndose a cualquier defecto material o jurídico que vulnere la posesión útil de la misma.

■ El requisito de no apariencia física depende de que la servidumbre se manifieste o revele por signos exteriores que acrediten su existencia. La doctrina es prácticamente unánime en reconocer igualmente lo que se denomina la apariencia jurídica, situación que se da cuando la carga o gravamen aparece en el Registro. Es la apariencia derivada de la publicidad registral, que por presunción legal se estima conocida por todos cuantos contratan sobre el inmueble. Castán expresa que "suele entenderse que es también condición precisa que el gravamen no conste en el Registro de la Propiedad, porque, de otro modo, el comprador pudo conocer perfectamente el estado del inmueble, y si sufre perjuicio debe imputárselo a sí mismo." (⁹) Manresa, (¹⁰) Scaevola, (¹¹) Puig Brutau (¹²) De Riego (¹³) y Borrell y Soler (¹⁴) están

---

(⁸) Véanse, *Stella* v. *Blasini*, 65 D.P.R. 331 (1945) y *M. Grau e Hijos* v. *Plaja*, 29 D.P.R. 713 (1921).

(⁹) *Derecho Civil Español, Común y Foral* (8a. ed., 1956) t. 4, pág. 108.

(¹⁰) *Comentarios al Código Civil Español* (5a. ed., 1950), t. X, págs. 243 y 244.

(¹¹) *Código Civil*, t. XXIII, pág. 599.

(¹²) *Fundamentos de Derecho Civil*, t. II, vol. II, págs. 200 y 201.

(¹³) *Instituciones de Derecho Civil Español*, t. II, pág. 171.

(¹⁴) *Derecho Civil Español*, t. 3.º, pág. 345.

acordes con este criterio que adoptamos en *Mejía v. Mouriño*, 68 D.P.R. 661, 663 (1948). Ossorio Morales, ([15]) al considerar la interacción de este precepto con el principio de publicidad que caracteriza la Ley Hipotecaria, señala que "Sintetizando, pues, todo lo dicho, creemos que el art. 1483 del Código civil [art. 1372 del Código civil de Puerto Rico] sólo es aplicable cuando ni el titular del gravamen ni el comprador hubiesen inscrito su derecho, *y que no podrá ejercitarse eficazmente la acción rescisoria de dicho artículo cuando uno de aquellos derechos estuviese registrado.* Si la carga está inscrita, el comprador no podrá jurídicamente alegar su desconocimiento; si la carga no consta en el Registro, el comprador que haya inscripto su título no podrá alegar lesión ni perjuicio de ninguna clase, condición básica para que el vendedor esté obligado al saneamiento." Tampoco cabe duda de que si por algún medio el comprador tiene conocimiento de la existencia del gravamen, conste o no inscrito, le estará vedada la acción rescisoria.

Bajo el derecho aplicable, según ha sido expuesto, la acción incoada no puede prosperar. Aceptando que la llamada servidumbre de alcantarillado no tuviere apariencia jurídica por no figurar inscrita, habiendo inscrito previamente los compradores demandantes su título, ello perjudica al titular del derecho de servidumbre no inscrito, y, los compradores no tendrán que soportar el gravamen pudiendo recurrir a la

---

([15]) *"Sobre una interpretación del art. 1483 del Código civil"*, Revista de Derecho Privado, t. 16 (1929), págs. 150, 152.

Pascual Lacal, en un artículo titulado "Interpretación del art. 1483 del Código civil", Revista de Derecho Privado, t. 16 (1929), pág. 94, había sostenido que la inscripción de gravamen no impedía el ejercicio de la acción rescisoria, fundándose en que la Ley Hipotecaria es exclusivamente una ley de terceros, inaplicable a las relaciones jurídicas establecidas por los contratantes. Frente a esta posición, Manresa, *op. cit.*, a la pág. 244, llama la atención hacia el hecho de que Art. 1537 del Código Civil español, idéntico en su texto al 1427 de Puerto Rico, 31 L.P.R.A. sec. 3961, precisamente dispone que "Todo lo dispuesto en esta parte [se refiere al contrato de compra y venta] se entiende con sujeción a lo que respecto de bienes inmuebles se determine en la Ley Hipotecaria."

acción negatoria de servidumbre contra el propietario del alegado predio dominante. Por otro lado, para la fecha en que los demandantes adquirieron el inmueble ya del Registro de Planos del Registro de la Propiedad aparecía una mención del trazado de una servidumbre de cinco metros a favor de la Autoridad de Acueductos y Alcantarillados que afectaba específicamente el solar por ellos comprado, y el conocimiento de esta constancia registral les era imputable. *Gaztambide* v. *Sucn. Ortiz*, 70 D.P.R. 412, 427 (1949); Martínez Irizarry, *El Principio de Fe Pública Registral en Puerto Rico*, Rev. C. Abo. P.R., vol. XXVIII, pág. 719, 731 (1968). Este fue el mismo plano que los adquirentes manifestaron *"haber examinado"* antes del otorgamiento del "contrato de promesa bilateral de compra y venta" y en el cual aparece claramente delimitada en líneas entrecortadas la franja de terreno a utilizarse para la instalación de la tubería de alcantarillado sanitario, refiriendo a la leyenda "5.0 M. P.R.A.S.A. Right of Way".

■ Podría argüirse que los demandantes descansaron en la afirmación de la vendedora de que, con excepción de otras cargas, el inmueble estaba libre de cargas o gravámenes, lo, que le relevaría de la investigación registral, *Sánchez* v. *Coll*, 69 D.P.R. 925, 931 (1949). Pero a este respecto vale recordar que a la fecha de la compraventa no se había establecido cumplidamente el derecho de servidumbre en la forma dispuesta por la ley, ([16]) y que, por tanto, la vendedora no podía mencionarlo ([17]) al hacer en la exposición de la escri-

([16]) Conforme al Art. 475 del Código Civil, 31 L.P.R.A. sec. 1653, las servidumbres continuas no aparentes sólo podrán adquirirse en virtud de título, y, en ciertos casos, por signo aparente, Art. 477 del Código Civil, 31 L.P.R.A. sec. 1655.

([17]) Se ha intentado demostrar que en fecha posterior a la compraventa la Autoridad de Acueductos y Alcantarillados adquirió la servidumbre mediante expropiación. A primera vista, la descripción de la parcela expropiada no parece concordar, especialmente por sus colindancias del Río Piedras y la Carretera Estatal núm. 41, con la de la servidumbre que aquí consideramos.

tura la relación en el estado de cargas. *Cf. Benet* v. *Registrador*, 65 D.P.R. 489 (1945).

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, y se declarará sin lugar la demanda.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron.