CARMEN SÁNCHEZ RODRÍGUEZ ET AL., demandantes, recurrentes y recurridos, *v.* ANTONIO LÓPEZ JIMÉNEZ ET AL., demandados, recurridos y recurrentes.

*Números:* R-84-279, *Resueltos:* 11 de marzo de 1985
R-84-280

174

*Carlos R. Ríos Gautier,* abogado de los codemandados y recurrentes esposos López Jiménez; *Orlando Vizcarrondo,* de *Arrieta & Vizcarrondo,* abogado de los recurrentes y recurridos esposos Valdejully López; *Iván Díaz de Aldrey,* de *Díaz de Aldrey, Subirá & Santana, Ramos & Latoni,* abogado de los recurrentes y recurridos esposos López Landrón; *Rafael Hernández Matos,*

*Jorge Meléndez Vela* y *José Davison Lampón,* abogados de los recurrentes y recurridos Carmen Sánchez Rodríguez, et al.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

"No hay hecho jurídico que rebase en importancia al de la muerte. La muerte, el más conmovedor fenómeno *vitae hominis,* remece con violencia atronadora hasta el último inciso del ordenamiento legal, produciendo una verdadera conmoción en el mundo jurídico." R. Ato Del Avellanal, *Proyecciones jurídicas de la muerte en diversas ramas del derecho,* IX Rev. C. Abo. La Plata 87, 89 (1967). Cuando alguien intenta burlar y menoscabar sus efectos jurídicos, a la postre verá que su pretensión es fallida, y lejos de facilitar, complicará y frustrará el natural desenvolvimiento de las cosas.

I

Mediante sentencia de 15 de marzo de 1983 nos pronunciamos interlocutoriamente sobre los siguientes hechos, relevantes y determinantes para la adjudicación de la presente controversia. Ello constituyó una guía preliminar para la consideración de la prueba adicional desfilada posteriormente ante el Tribunal Superior, Sala de Bayamón, cuyo dictamen satisface fehaciente y elocuentemente las interrogantes apuntadas en aquella etapa inicial de los procedimientos.

Es un hecho indisputado por las partes que en alguna fecha cercana a las navidades del año 1955, ya fallecido el Sr. Obdulio Correa Rodríguez, se le hizo figurar como otorgante de la escritura pública núm. 212 del protocolo de ese año del notario Lcdo. José R. Fournier para vender a los esposos Antonio López Jiménez y Margot Felices Saenz un condominio indiviso de una mitad en una finca de 10.71 cuerdas y una finca colindante con ésta, de una cabida de 12.24 cuerdas. La firma e iniciales del otorgante Correa Rodríguez fueron falsificadas por el notario autorizante. La esposa de dicho otorgante compareció y firmó la escritura. La misma fue antedatada para sustituir otra que con el mismo número 212 había

sido otorgada en agosto de 1955, antes de morir Correa Rodríguez, y en la cual se constituía hipoteca en garantía de determinado pagaré.

No obstante, los siguientes planteamientos entre otros suscitan controversias que no pueden ser dirimidas en ausencia de pruebas que puedan aportar ambas partes, y a base de la credibilidad que los testigos puedan merecer:

¿Tenían conocimiento la hoy viuda de Obdulio Correa Rodríguez, demandante Carmen Sánchez Rodríguez, y los esposos compradores, de la falsificación y actuaciones fraudulentas sobre el otorgamiento de la citada escritura núm. 212?

¿Estaban ajenos a esa transacción los hijos de los esposos Correa Rodríguez-Sánchez Rodríguez, co-demandantes Carmen Belén y Obdulio Correa Sánchez?

¿Es cierto que se otorgó otra escritura, núm. 270, ante el mismo notario Fournier, en que Obdulio Correa Rodríguez comparece como vendedor junto a su esposa y venden a su hija Carmen Belén Correa Sánchez una propiedad denominada La Loma? ¿Es cierto que en esta alegada escritura también se falsificó la firma del otorgante Correa Rodríguez, y que dicha escritura, otorgada después de la muerte de éste, se antedató a una fecha anterior a su muerte? De ser esto cierto, ¿qué motivo hubo para ello, y qué relación tuvo esa transacción con lo actuado respecto de la escritura núm. 212?

¿Qué razones explican que transcurrieran más de veinticinco años sin que se reclamara la nulidad de la venta informada en la escritura núm. 212?

¿Hubo una transacción entre demandantes y demandados a fines de 1955, encubierta bajo la fraudulenta escritura núm. 212? Si la hubo, ¿cuál fue? ¿O hubo precio real invertido en pago de deudas?

Estas y otras consideraciones aconsejan que el litigio aquí planteado se decida a base de prueba y no mediante sentencia sumaria.

Examinadas las conclusiones de hecho emitidas por el tribunal de instancia, con apoyo en la prueba testifical y documental, las respuestas son las siguientes.

Las codemandantes Carmen Sánchez Rodríguez y Carmen

Belén Correa —viuda e hija respectivamente de Obdulio Correa Rodríguez— tuvieron conocimiento de la ilegalidad de la transacción reseñada. Consintieron y participaron activamente en la misma. En justicia es menester reconocer que la ideación espuria en su ejecución instrumental fue producto de José R. Fournier, en aquella época abogado e íntimo amigo de la familia y los compradores esposos López Felices.

Los esposos compradores López Felices también tuvieron conocimiento de la ilegalidad de la transacción una vez fue propuesta por el licenciado Fournier. La acogieron y promovieron hasta las últimas consecuencias. En particular, se destaca la reiterada ocultación del señor López Jiménez a Obdulio Correa Sánchez —hijo del causante— poco después de consumada la misma. Los hijos del matrimonio López Felices nada tuvieron que ver con dichas irregularidades.

A Obdulio Correa Sánchez le fue ocultado todo el negocio simulado por el cual se enajenó el 50% de un condominio proindiviso explotado comercialmente como un motel perteneciente a su padre. Desconoció totalmente la transacción. En forma alguna consintió en la venta. Al parecer, la madre e hija repudiaban ese tipo de negocio por razones morales. Muerto Obdulio Correa Rodríguez sin dejar dinero suficiente en efectivo para el pago de deudas, vieron ocasión propicia para venderlo. Conociendo el interés y entusiasmo de Correa Sánchez por este tipo de negocio, y previendo su oposición, le hicieron creer que su padre "vendió" poco antes de morir. El Lic. José R. Fournier, designado administrador de la sucesión, se encargó de materializar como notario —con todo el deshonor que ello representa para el ministerio de la abogacía— esta afrenta a las leyes y a la moral. En la consecución de ese fin se falsificó la firma del causante y evadió el pago de contribuciones sobre herencias al Estado. A su vez, prevaleció una total inobservancia y violaciones a los procedimientos que rigen la venta de bienes hereditarios. En particular, se perjudicaron extraordinariamente los derechos y facultades del coheredero Correa Sánchez.

La venta según relatada consistió de un acuerdo en virtud del cual los compradores esposos López Felices, a cambio de recibir el título universal del condominio, se obligaron a pagar las deudas a cargo del caudal hereditario, ascendentes a $70,000. Como compradores honraron las mismas. "Don Antonio López Jiménez se daba por satisfecho de $21,000.00 que se le adeudaban a él y asumiría deudas de Obdulio Correa Rodríguez, a saber, $15,000.00 del préstamo a Medina Ben; $16,000.00 de la hipoteca de la casa de Rogelia Oyola; $7,000.00 a Basilio Santiago; $4,000.00 a Nolla; $5,000.00 a Frank Rodríguez y $2,500.00 a la Colonia Hispanoamericana. Estas deudas fueron satisfechas por el Sr. López Jiménez. No se hizo más gestión de cobro por ellas a la Sucesión del finado Correa Rodríguez. . . . *A pesar de que el Sr. López Jiménez asumió las deudas antes especificadas como pago del precio acordado en $70,000.00, en la escritura se figuró el precio de $46,000.00 por la parte del motel (mitad indivisa de terreno y estructura) y $4,000.00 por la finca colindante.* . . . El valor real del terreno y las primeras 13 cuerdas edificadas a la fecha de la transacción era de $85,000.00." (Énfasis suplido.)

Verificada la transacción, Obdulio Correa Sánchez, inició gestiones investigativas tendentes a corroborar la veracidad de la transacción. Su madre y hermana la ocultaron. López Jiménez y Fournier hicieron lo mismo. Este último le entregó copia literal de la escritura falsificada en la que no aparecían las firmas de los otorgantes. Correa Sánchez asumió que todo "era cierto". Aún así, tiempo después mostró dudas. Ello se desprende de un diálogo sostenido con su socio Jorge Tirado Erazo. En 1968 contrató los servicios profesionales del Lic. Tulio Villanueva para que le tramitara la acción legal correspondiente. Villanueva inició una investigación en el Registro de la Propiedad. Examinado el índice notarial, "[n]otaron que en dicho índice se hacía referencia a una escritura 212, en la que comparecía el finado Obdulio Correa Rodrí-

guez, pero el objeto del documento era de hipoteca en garantía de pagaré y no de compraventa". Luego de múltiples incidentes y de recibir explicaciones del licenciado Fournier, Villanueva concluyó que no tenía pruebas contundentes. No radicó acción. Entregó el expediente a su cliente. Posteriormente, en "el año 1978, buscando los documentos que se llevaron a casa de su madre, [provenientes de un inmueble vendido en esa época] Obdulio Correa Sánchez encontró copia de la escritura 212 de hipoteca en garantía de pagaré al portador, que se había otorgado el 16 de agosto de 1955". Previamente, en el año 1976, y a base de las sospechas que tenía, Correa Sánchez había radicado querella ante el Procurador General contra el licenciado Fournier. Este último rápidamente se le acercó y le ofreció propiedades. El querellante Correa Sánchez aceptó y retiró la querella. El Procurador General archivó a base de esa solicitud. Finalmente, el licenciado Fournier no cumplió su promesa. En el año 1981, y basado en el hallazgo del documento antes aludido, Correa Sánchez presentó demanda contra su madre, hermana, y entre otros a los esposos López Felices. Subsiguientemente enmendó su demanda para incorporar a su madre y hermana como codemandantes. Los esposos López Felices reconvinieron contra estas últimas.

El tribunal de instancia, examinada la prueba y planteamientos de derecho de las partes, en documentada y elaborada sentencia, declaró con lugar la demanda en cuanto a Obdulio Correa Sánchez contra los codemandados López Felices. Desestimó todas las otras reclamaciones. En particular negó remedios a la viuda del finado y su hija contra estos últimos y viceversa. Decretó nulo e inexistente el negocio aludido, por existir causa ilícita o torpe, imputable a todas las partes contratantes.

Inconformes, las partes recurrieron. Emitimos orden para mostrar causa concebida en los siguientes términos:

Evaluados sus méritos a la luz de los memorandos y planteamientos de las partes, y demás documentos anejos, se con-

cede a éstas un término simultáneo de quince (15) días para que comparezcan por escrito a mostrar causa por la cual no deba limitadamente expedirse un auto de revisión a los únicos fines de modificar la Sentencia Parcial del Tribunal Superior, Sala de Bayamón, fechada 13 de abril de 1984, en los siguientes extremos:

(1) La conclusión de que la relación surgida entre Obdulio Correa Rodríguez y Antonio López Jiménez al adquirir el terreno y al construir el motel y arrendarlo constituyó una comunidad de bienes, no obstante las determinaciones de hecho y jurisprudencia aplicable apuntar hacia la existencia de una sociedad;

(2) Revocar la desestimación de la reclamación incoada por los demandados López Jiménez, su esposa Margot Felices y la sociedad legal de gananciales por ellos constituída (tercera reconvención), contra las demandantes Carmen Sánchez Rodríguez y Carmen Belén Correa Sánchez y su esposo el Sr. Acosta Amador y la sociedad legal de gananciales por ellos constituída. Según la prueba, dicha reclamación es procedente ya que estas últimas, en unión a López Jiménez, deben ser responsables frente al demandante Obdulio Correa Sánchez y esposa Nilda Velázquez Rivera y sociedad conyugal, por las actuaciones en común acuerdo relativas —y como consecuencia— de la falsificación de la escritura pública número 212 hecha con posterioridad al 2 de noviembre de 1955 por el entonces notario José R. Fournier con fecha espúrea [sic] de 16 de agosto; y

(3) Imponer costas al codemandado López Jiménez, su esposa y sociedad conyugal para beneficio del co-demandante Obdulio Sánchez, su esposa y sociedad conyugal.

En virtud del pronunciamiento número dos (2) que precede se trasluce un posible conflicto de interés encontrado, dimanante de una misma representación legal (Canon 21 del Código de Etica Profesional) entre el codemandante Obdulio Correa Sánchez, su esposa y sociedad conyugal, y las codemandantes Carmen Sánchez Rodríguez y Carmen Belén Correa Sánchez de Acosta, esposo y sociedad conyugal por los abogados Rafael Hernández Matos, Jorge Meléndez Vela, José Davison Lampón y Enid Colón Jiménez. Estos letrados deberán ilustrarnos al respecto, y de ser necesario adoptar inmediatamente las medidas cautelares pertinentes para su-

perar y eliminar todo posible conflicto de intereses de finalmente prevalecer la enmienda a la sentencia según aquí intimado.

Todas las partes han comparecido. Sus escritos no nos han convencido de modificar el ámbito de la revisión limitada, según intimada.

## II

■ La apreciación de la prueba por el tribunal de instancia merece gran deferencia nuestra. Transcurridos más de veinticinco (25) años desde los hechos, una fiel reconstrucción de los mismos ha sido labor ardua y compleja, amén de las consabidas dificultades inherentes que entraña dirimir la credibilidad de los testigos. Véase *García* v. *A.F.F.*, 103 D.P.R. 356, 357-358 (1975). Examinados los planteamientos de las partes no encontramos motivos para modificar tales determinaciones. En un proceso reflexivo y racional, la prueba las apoya. En ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad o error manifiesto nos abstendremos de intervenir en cuanto al trasfondo fáctico. *Pérez Cruz* v. *Hosp. La Concepción*, 115 D.P.R. 721 (1984).

Aclarado este extremo, sólo nos resta pasar juicio sobre la recta y justa aplicación del derecho a las partes. Primeramente, de correcta juridicidad consideramos la conclusión del foro de instancia al estimar que la causa del contrato aludido es ilícita o torpe. Por resultar imprescindible para la solución del caso, brevemente haremos una incursión en la doctrina envuelta.

■ El derecho de contratos en nuestro ordenamiento jurídico está asentado en la premisa inexorable de que no existe contrato sin causa o cuando la causa es ilícita. Art. 1227 del Código Civil;[1] *Julsrud* v. *Peche de P. R., Inc.*, 115 D.P.R.

---

[1] "Los contratos sin causa, o con causa ilícita no producen efecto alguno. Es ilícita la causa cuando se opone a las leyes o a la moral." 31

18 (1983); *Coop. La Sagrada Familia v. Castillo*, 107 D.P.R. 405, 418 (1978); *Gual v. Sucn. Sobrinos de A. Ribot*, 88 D.P.R. 159, 162–164 (1963); *Hernández Usera v. Srio. de Hacienda*, 86 D.P.R. 13, 18–25 (1962); *Serra v. Salesian Society*, 84 D.P.R. 322, 335 (1961); *Rubio Sacarello v. Roig*, 84 D.P.R. 344, 350–353 (1962); *Monserrate v. Lopés*, 80 D.P.R. 491, 501–503 (1958); *Guzmán v. Guzmán*, 78 D.P.R. 673, 676–678 (1955); *Corporación Azucarera v. Junta Azucarera*, 77 D.P.R. 397, 409–410 (1954); *Sánchez v. Coll*, 69 D.P.R. 925, 927–930 (1949); *Fernández v. Laloma*, 56 D.P.R. 367, 375–381 (1940); *Log. "Cab. de Agueynaba" v. Log. "Cab. de Phydias"*, 47 D.P.R. 528, 533–535 (1934); *Saavedra v. Saavedra*, 46 D.P.R. 232, 234 (1934); *González Rodríguez v. Fumero*, 38 D.P.R. 556, 562–573 (1928); *Rivera v. Rivera et al.*, 24 D.P.R. 172, 173 (1916); *Franceschi et al. v. Sambolín et al.*, 10 D.P.R. 114, 119–121 (1906).

■ Es ilícita la causa cuando se opone a las leyes o la moral. Se trata de una lesión a un interés general de orden jurídico o moral. J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 650. Es significativo notar, sobre este extremo, que en el Derecho romano la palabra "causa" apareció, entre otras vertientes, en conexión con la *condictio ob turpem causam*. J. Puig Brutau, *Fundamentos de Derecho civil, doctrina general del contrato*, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. I, págs. 123–124.

■ Como corolario, una vez determinada la ilicitud de la causa, el contrato es nulo e inexistente. Arts. 1257 y 1258 del Código Civil, 31 L.P.R.A. secs. 3516 y 3517. Puig Brutau, *op. cit.*, pág. 297 y ss.; J. Delgado Echeverría, *Comentarios al Código civil y compilaciones forales*, Madrid, Ed. Rev. Der.

L.P.R.A. sec. 3432. *Cf*. Art. 4 del Código Civil, 31 L.P.R.A. sec. 4: "Son nulos los actos ejecutados contra lo dispuesto en la ley. . . ."

Privado, 1981, T. XVII, Vol. 2, pág. 282 y ss.; Manresa, *op. cit.*, págs. 878–881; Q. M. Scaevola, *Código Civil*, 2da ed., Madrid, Ed. Reus, 1958, T. XX, pág. 822 y ss. Adviértase, sin embargo, que por vía de excepción, la norma prevaleciente en la regulación de esta materia, que condena a las partes contratantes a la restauración del estado primitivo anterior de las cosas mediante la restitución de las prestaciones objeto del contrato, no es aplicable cuando la causa es torpe e ilícita. Arts. 1255, 1257 y 1258 del Código Civil.(²) Prevalece como criterio de apreciación el concepto de "culpa" o "torpeza" atribuible a las partes. En síntesis, si ambas son culpables estarían impedidas de reclamarse recíprocamente.

■ Se observa además, que el alcance de la exclusión de la repetición como sanción impide la acción reinvindicatoria.

---

(²) Respectivamente rezan:

"Declarada la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio con los intereses, salvo lo que se dispone en las secciones siguientes." 31 L.P.R.A. sec. 3514.

 . . . . . . . .

"Cuando la nulidad provenga de ser ilícita la causa u objeto del contrato, si el hecho constituye un delito o falta común a ambos contratantes, carecerán de toda acción entre sí, y se procederá contra ellos, dándose además a las cosas o precio que hubiesen sido materia del contrato, la aplicación prevenida en el Código Penal, Título 33, respecto a los efectos o instrumentos del delito o falta.

"Esta disposición es aplicable al caso en que sólo hubiere delito o falta de parte de uno de los contratantes; pero el no culpable podrá reclamar lo que hubiese dado, y no estará obligado a cumplir lo que hubiera prometido." 31 L.P.R.A. sec. 3516.

 . . . . . . . .

"Si el hecho en que consiste la causa torpe no constituyere delito ni falta, se observarán las reglas siguientes:

"1. Cuando la culpa esté de parte de ambos contratantes, ninguno de ellos podrá repetir lo que hubiera dado a virtud del contrato, ni reclamar el cumplimiento de lo que el otro hubiese ofrecido.

"2. Cuando esté de parte de un solo contratante, no podrá éste repetir lo que hubiese dado a virtud del contrato, ni pedir el cumplimiento de lo que se le hubiera ofrecido. El otro, que fuera extraño a la causa torpe, podrá reclamar lo que hubiera dado, sin obligación de cumplir lo que hubiera ofrecido." 31 L.P.R.A. sec. 3517.

No obstante, ello no ocurre cuando una de las partes es inocente. En tal caso sería permitídole la restitución. Para que tenga lugar la privación de la repetición, la doctrina requiere que el sujeto de que se trate, haya tenido conocimiento de las circunstancias de las que deriva la ilicitud, o conciencia de la ilicitud misma o hubiera debido tenerla. Delgado Echeverría, *op. cit.*, págs. 307–309. Así, la doctrina moderna al estimar la causa, admite en su vertiente subjetiva considerar los motivos que permearon la contratación. J. Castán Tobeñas, *Derecho Civil español común y foral*, 13ra ed., Madrid, Ed. Reus, 1983, T. III, págs. 537–543; F. De Castro y Bravo, *El Negocio Jurídico*, Madrid, Ed. Ins. Nac. Est. Jur., 1967, págs. 177–253; L. Cariota Ferrara, *El Negocio Jurídico* (M. Albaladejo, traductor), Madrid, Ed. Aguilar, 1956, págs. 486–506. Esto es, "la referencia a una causa torpe supone una valoración de los móviles o motivos que han inducido a contratar. En este caso no se trata, pues, de un elemento del contrato que sea necesario para su normal perfección. . . . Pero conviene retener esta diferencia que media entre la causa en el sentido de reciprocidad de prestaciones (como en la compraventa la entrega de la cosa y el pago del precio) y los motivos, en el sentido de elementos en principio extrajurídicos, pero potencialmente relevantes ante el ordenamiento legal, si lo aconsejan razones bastante poderosas para que el contrato sea declarado nulo". Puig Brutau, *op. cit.*, pág. 124.

■ La doctrina se ha cuestionado el porqué de la severidad de semejante castigo a las partes contratantes. Razones persuasivas de peso lo justifican. En primer término, se invoca el principio *in pari delicto melior est causa possidentis* o la compensación de culpas que impide la repetición. Véanse *Rubio Sacarello* v. *Roig*, supra, págs. 350–353; *Fernández* v. *Laloma*, supra, págs. 380–381; *Saavedra* v. *Saavedra*, supra, pág. 234. Se arguye también en el Derecho extranjero el concepto de "pena civil" contra el atribuyente, o "indignidad procesal" en razón de la conducta inmoral de quien se ha colo-

cado fuera del ordenamiento jurídico. En el caso específico del Código Civil español la sanción extrema responde claramente a una finalidad penal que deriva del derecho sustantivo aplicable al caso. Delgado Echeverría, *op. cit.*, págs. 305–306. Por último, la ilicitud de la causa es un problema jurídico a ser dirimido por la prueba, que incumbe demostrar a quien lo invoque y cuya apreciación compete a los tribunales de instancia. Manresa, *op. cit.*, pág. 650. Esto es, "[l]a *turpitudo* resulta de la finalidad con que una realizó determinada atribución patrimonial, y sólo puede apreciarse tras el enjuiciamiento de aquellos hechos: no es una tara conocida con que la persona acude al Tribunal, sino una valoración que éste hace después de conocer los hechos y a los efectos precisos señalados por la Ley". Delgado Echeverría, *op. cit.*, pág. 306.

■ Al aplicar los principios expuestos al caso de autos, resulta evidente que las partes contratantes —Carmen Sánchez Rodríguez, su hija Carmen Belén Correa y los esposos López Felices— convinieron y realizaron un negocio jurídico que violó importantes preceptos de ley, y lesionó indebidamente el interés público y la moral. La "forma" utilizada para la ejecución del contrato afecta su validez intrínseca per se, y es suficiente para su invalidación. La falsificación de la firma del causante anula radicalmente todo el instrumento público conforme la Sec. 20 de la Ley Notarial, 4 L.P.R.A. sec. 1020, y jurisprudencia. Este precepto informa: "las circunstancias que vician de nulidad formal radical total una escritura. Se trata de infracciones a la gestión notarial que no pueden convalidarse. La firma es un requisito esencial del instrumento por estimarse que ello conlleva una aprobación del texto escrito que antecede. Si la omisión de la firma invalida el otorgamiento, *no se necesita mucho esfuerzo para entender el impacto que conlleva la falsificación de una firma en el instrumento.*" (Énfasis suplido.) *Sucn. Santos* v. *Registrador*, 108 D.P.R. 831, 837 (1979).

▮ Por otra parte, fue clara y manifiesta la intención de las partes de menoscabar las facultades del coheredero Correa Sánchez, quien tenía derecho a conocer y consentir en la venta aludida. Prevaleció una total inobservancia de las disposiciones de ley que regulan la venta de bienes hereditarios. Art. 984 del Código Civil, 31 L.P.R.A. sec. 2821. En lo pertinente el legislador refirió al Código de Enjuiciamiento Civil, hoy conocido como "Ley de Procedimientos Legales Especiales", el trámite a seguir para dicha venta. Dispone el Art. 579 de la referida ley lo siguiente:

> El administrador no venderá los bienes inventariados, excepción hecha de los que puedan deteriorarse, de aquellos cuya conservación sea difícil y costosa, de los frutos para cuya enajenación se presenten circunstancias ventajosas, y de los demás bienes cuya enajenación sea necesaria para el pago de deudas del finado o cubrir atenciones de la administración. *La corte, a propuesta del administrador y previa notificación y audiencia de los herederos reconocidos, podrá decretar la venta de cualesquiera de dichos bienes en pública subasta, y previo avalúo por peritos.* Las subastas se verificarán con las mismas solemnidades y en los propios términos establecidos para las de los arrendamientos. (Énfasis suplido.) 32 L.P.R.A. sec. 2439.

▮ Hemos reconocido que el propósito de esta reglamentación es brindar protección a los herederos, acreedores y legatarios de un menoscabo a sus intereses legítimos. *Sucn. Mercado Parra* v. *Srio. de Hacienda*, 92 D.P.R. 710, 717 (1965). Cuando existen estas disposiciones especiales deben cumplirse con estricto rigor. *Marchese* v. *Marchese*, 81 D.P.R. 729, 735–737 (1960). La doctrina se ha enfrentado con la interrogante de precisar si los negocios en fraude de herederos están comprendidos en el articulado estudiado referente a la causa torpe o ilícita. La respuesta es en la afirmativa, condicionada. Véase V. Torralba Soriano, *Causa ilícita: exposición sistemática de la jurisprudencia del Tribunal Supremo,* 19 An. Der. Civ. 661 (1966). A tal efecto, mediante Senten-

cia Núm. 3577 de 11 de diciembre de 1957, el Tribunal Supremo español, Aranzadi, XXIV Repertorio de Jurisprudencia 2386 (1957), en lo pertinente, se expresó:

CONSIDERANDO: Que el principio general "nimo auditur suam turpitudinem allegaus" ha sido acogido por el artículo 1306 del Código Civil en el sentido de que *no hay acción para repetir lo que se hubiera dado a virtud de actos realizados con causa torpe o ilícita* por lo que, como derivación de la doctrina anteriormente expuesta, *el demandante en estos autos, incurso en la causa torpe ya mencionada, no está activamente legitimado en su pretensión esencial de que se anulen los actos de renuncia y venta que él llevó a efecto con la finalidad ilícita de perjudicar a su segunda mujer y a su hijo habido en segundo matrimonio, privándoles de sus derechos legitimarios, siquiera los tuvieran en expectativa,* [ (énfasis en el original) ] por lo que, siendo suficiente este razonamiento jurídico, basado en los propios hechos alegados y probados en la instancia, para mantener el pronunciamiento absolutorio de la demanda que el fallo recurrido decretó con apoyo en argumentación jurídica distinta, carece también de viabilidad el restante motivo primero del recurso, sin perjuicio *de la acción o derecho que a la segunda mujer e hijo de segundo matrimonio no intervinientes en este litigio, les pueda asistir por razón de los hechos procesales enjuiciados en estos autos.* (Énfasis suplido.)

Nuestro ordenamiento debe seguir igual ruta. Es justo y lógico. Véanse *De Jesús Díaz* v. *Carrero*, 112 D.P.R. 631, 636–643 (1982); *La Costa Sampedro* v. *La Costa Bolívar*, 112 D.P.R. 9, 16–31 (1982). En situación en que un administrador heredero vende bienes del caudal sin autorización de todos los herederos o del tribunal, un estudioso en la materia acertadamente expresa que "responde de los daños que su conducta cause a los interesados, si bien los terceros adquirentes están al margen de las acciones que los interesados puedan incoar, excepto que sean partícipes de la conducta indebida del administrador". E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I,

pág. 192. Véanse, además, Castán Tobeñas, *op. cit.*, 8va ed., 1978, T. VI, Vol. 1, págs. 191–204; Manresa, *op. cit.*, 1955, T. VII, págs. 594–599. El Estado también tiene unos intereses legítimos que proteger. La evasión de pago de contribuciones por herencia atenta contra la política fiscal del Estado Libre Asociado de Puerto Rico. *Sucn. Mercado Parra v. Srio. de Hacienda*, supra, págs. 716–717; *Sánchez v. Coll*, supra, págs. 927–929; *Sucn. Evans v. Srio. de Hacienda*, 108 D.P.R. 713, 717–718 (1979).(³) Aun considerando que en algunas circunstancias un negocio contenido en una escritura pública defectuosa podría subsistir ínter partes como privado bajo la "teoría de conversión" —*S. J. Credit, Inc.* v. *Ramírez*, 113 D.P.R. 181, 189 (1982)— en el drama fáctico de autos, la falsificación de la firma del causante opera como motivo de nulidad radical absoluta.

### III

■ Examinados los términos del convenio entre el causante y el codemandado López Jiménez para la adquisición del predio de terreno y edificación, explotado con ánimo de lucro como negocio de motel, concluimos que el mismo fue uno de sociedad y no de comunidad. *Daubón Belaval* v. *Srio. de Hacienda*, 106 D.P.R. 400 (1977). Su génesis identifica su naturaleza jurídica. Fue producto de la voluntad expresa de ambos. Su regulación respondió al exclusivo criterio de obtener lucro. Libre y voluntariamente pactaron explotarlo. Sus actuaciones no fueron simplemente para mantener la integridad del inmueble y sus anejos. Tampoco favorecer su conser-

---

(³) Advertimos sin embargo, que tal violación de ley implica que "[l]a escritura pública de enajenación o disposición de bienes heredados, hecha en violación de esa disposición, podría perder su calidad de auténtica y su fuerza probatoria como tal, *pero si está firmada por los otorgantes valdrá entre las partes en concepto de documento privado*, sin que se afecte la existencia y eficacia en sí del acto jurídico en ella consignado. Lo que sólo queda afectado es la *forma* solemne que se le haya procurado dar". (Énfasis suplido.) *Quiñones Quiñones* v. *Quiñones Irizarry*, 91 D.P.R. 225, 299 (1964).

vación. Conjuntamente con el arrendatario Sr. Frank Rodríguez se construyeron casetas. Éste aportó financiamiento a cambio de que no se aumentara la renta. Igualmente lo hacían Correa Rodríguez y López Jiménez quienes también usaron parte de la renta generada. En su operación y explotación se le inyectó al negocio de motel una dinámica de crecimiento. Existían planes futuros de ampliación. No fueron culminados por la muerte del socio Obdulio Correa Rodríguez. Todas estas y otras características derrotan la conclusión de derecho del tribunal de que nació una comunidad. En este extremo debe modificarse la sentencia parcial.

▮▮▮▮ En cuanto a la desestimación decretada de la reconvención de los esposos López Felices, también erró el foro de instancia. La misma fue interpuesta oportunamente. Procede en derecho. Véase *Ramos* v. *Caparra Dairy, Inc.*, 116 D.P.R. 60 (1985). No debe confundirse el impedimento ipso jure de las partes contratantes declaradas incursas en ilicitud o torpeza de causa para repetir —como pretendían las codemandantes señoras Sánchez Rodríguez y Correa Sánchez— con la capacidad de reclamarse recíprocamente responsabilidad frente a un tercero que no fue parte en la transacción ilegal. Tampoco procede el planteamiento de que la reconvención por los esposos López Felices no fue a nombre de la sociedad. Véanse *Echevarría* v. *Despiau*, 72 D.P.R. 472, 475–476 (1951); *Meléndez* v. *Iturrondo*, 71 D.P.R. 60, 63 (1950). El procedimiento puro formal, no debe obstaculizar ni derrotar el derecho sustantivo de las partes cuando de las alegaciones surge la calidad de las partes. *Moa* v. *E.L.A.*, 100 D.P.R. 573, 586 (1972). Igualmente inmeritorios son los planteamientos de incuria y prescripción de la causa de acción. La prescripción no corre contra lo inexistente. D. Espín Cánovas, *La nulidad absoluta del negocio jurídico y los efectos de la prescripción extintiva y de la usucapión*, 23 An. Der. Civ. 519 (1970); *J.R.T.* v. *P. R. Telephone Co., Inc.*, 107 D.P.R. 76, 79–83

(1978) ; *Piovanetti Doumont* v. *Martínez,* 99 D.P.R. 663, 667 (1971) ; *Rodríguez* v. *Sucn. Pirazzi,* 89 D.P.R. 506 (1963).([4])

 Finalmente, hemos ponderado el aspecto del potencial conflicto de intereses dimanante de esta decisión. Aunque pueden existir criterios distintos respetables, la pureza del procedimiento y la honestidad incuestionable de los representantes legales de las partes comparecientes nos mueven a pronunciarnos. Se promueven y sirven mejor los postulados éticos, dictaminando que como consecuencia de esta decisión existe un insalvable conflicto de intereses que impide a los abogados en cuestión continuar —una vez devuelto el mandato— la representación simultánea de los codemandantes Carmen Sánchez Rodríguez, Carmen Belén Correa y Obdulio Correa Sánchez. Debemos recordar que "la conclusión de que un conflicto de intereses existe solamente si surje en el presente una discrepancia entre las posiciones asumidas por los clientes no es necesariamente inconsistente con el reconocimiento de la existencia de posibles discrepancias teóricas que puedan crear un conflicto de intereses potencial impermisible". Véase *In re Carreras Rovira y Suárez Zayas,* 115 D.P.R. 778, 792 (1984).

*Se dictará la correspondiente sentencia que modifique según expuesto, la del Tribunal Superior, Sala de Bayamón. Continuarán ante dicho foro los trámites compatibles con lo resuelto.*

El Juez Asociado Señor Rebollo López no intervino.

---

(4) El planteamiento esbozado por los codemandados López Felices relativo a la venta que hiciera Obdulio Correa Sánchez de su participación hereditaria a su madre y hermana no amerita discusión por su inmeritoriedad. No puede haber vendido Correa Sánchez su participación en un bien cuando desconocía su existencia.