Segarra Olivero, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El peticionario, Ricardo Quiñones Rivera, nos solicita que revisemos una sentencia parcial dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual se aprobó el informe particional sometido por el contador partidor, se ordenó la partición y distribución de la herencia objeto de la controversia de autos de conformidad con dicho informe, y se aceptó la solicitud de *733 intervención presentada por los esposos Troche-Rodríguez.
Por las razones que más adelante expondremos, se expide el auto solicitado y se confirma la sentencia recurrida.
I
Examinemos los hechos que dieron margen a la presentación de este recurso.
La Sra. Carmen Julia Quiñones Chacón, en lo sucesivo la causante, falleció el 25 de mayo de 1992. El 25 de enero de 1992 había otorgado un testamento abierto mediante la escritura pública número once (11) ante el notario Dizzy Murphy Rodríguez. En dicho testamento, la causante, quien no tenía herederos forzosos, instituyó como sus herederos a su hermano Buenaventura Quiñones Chacón, en cuanto a la mitad de la herencia, y a sus sobrinos Pascacio, Juárez, Milza y Amparo, todos de apellidos Quiñones Barthel —en adelante los recurridos— en cuanto a la otra mitad del caudal hereditario. La causante legó a su hermano Buenaventura Quiñones Chacón, quien también fue nombrado albacea testamentario, un inmueble de aproximadamente tres cuerdas, localizado en el Barrio Caño de Guánica. El Ing. Pablo Acosta Cruz fue nombrado albacea sustituto. En el referido testamento la causante revocó expresamente un testamento anterior otorgado el 25 de abril de. 1978 ante otro notario.
Así las cosas, el albacea y heredero Buenaventura Quiñones Chacón les sometió a los herederos un proyecto de partición de herencia que no fue aceptado por los aquí recurridos, los hermanos Quiñones Barthel. Debido a esto, los recurridos presentaron ante el Tribunal de Primera Instancia, Sala Superior de Ponce, una petición en la que solicitaron la designación de un contador partidor que llevara a cabo la división de la herencia. El 28 de marzo de 1994, el Tribunal de Primera Instancia nombró como contador partidor al Ledo. Edwin Toro Goyco.
El contador partidor designado por el tribunal a quo le requirió al albacea y a los otros herederos que le suministraran la información necesaria para preparar el inventario de bienes y obligaciones del caudal relicto de la finada. Para ello, citó en varias ocasiones al albacea testamentario y a los herederos. Iniciados estos trámites, falleció el heredero y albacea testamentario Buenaventura Quiñones Chacón, dejando como herederos a sus hijos Sylvia y Buenaventura Quiñones Gómez y a Ricardo Quiñones Rivera, (peticionario en el caso de autos), quienes le sustituyeron en la porción correspondiente de la herencia de la causante.
El 16 de junio de 1995 el contador partidor presentó ante el tribunal a quo dos cuadernos particionales. [1] El 22 de junio de 1995 el Tribunal de Primera Instancia emitió resolución mediante la cual le concedió veinte (20) días a las partes para que presentaran sus comentarios y objeciones a estos cuadernos particionales. Dentro de dicho término, el 3 de julio de 1995 compareció ante el tribunal Ricardo Quiñones Rivera, aquí peticionario, mediante moción por derecho propio en la que solicitó que se le permitiera expresar su opinión en cuanto a los cuadernos particionales. Alegó, además, que estaba en desacuerdo con algunas partidas del cuaderno particional, entre las cuales mencionó la valoración de una sortija que tenía en su poder y algunos adelantos que alegadamente se le habían descontado de su participación en la herencia de la causante. Estas alegaciones no fueron acompañadas con prueba alguna.
El 6 de julio de 1995 el tribunal a quo concedió a la representación legal del heredero Buenaventura Quiñones Gómez, una prórroga de quince (15) días para someter comentarios sobre el cuaderno particional.
Posteriormente, el contador partidor compareció en varias ocasiones ante el tribunal a quo solicitando la aprobación del cuaderno particional o la celebración de una vista para discutir las objeciones del peticionario, habida cuenta que habían transcurrido varios meses desde que el peticionario había hecho sus alegaciones y no había solicitado la celebración de una vista para dilucidar sus planteamientos.
Así las cosas, el 13 de noviembre de 1995 los esposos Frontera-Rodríguez, en adelante los interventores, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Ponce, una demanda *734 en la que solicitan se les permita intervenir en el pleito al cual hemos hecho referencia y que se ordene el cumplimiento específico de un contrato de compraventa de un solar de 340.9873'metros cuadrados otorgado entre ellos y la causante el 25 de agosto de 1989. Los interventores reclaman que se ordene a los herederos de la causante el otorgamiento de las correspondientes escrituras de segregación, compraventa y agrupación. Por último, los interventores solicitan que se de cumplimiento específico a un contrato verbal que alegadamente habían otorgado con la causante para la compraventa de otro predio de terreno de 416.18 metros cuadrados.
El 25 de enero de 1996 el peticionario Ricardo Quiñones Rivera presentó moción titulada "Escrito Exponiendo las Posiciones del Heredero Ricardo Quiñones Rivera Sobre Asuntos Planteados en el Caso de Epígrafe" en el que reclama, en síntesis, lo siguiente: (a) tiempo adicional para someter sus objeciones finales al cuaderno particional presentado por el contador-partidor; (b) que se celebre una vista para dilucidar las mismas; y (c) que se declare sin lugar la demanda de intervención presentada por los esposos Troche-Rodríguez. El peticionario se opuso a la solicitud de intervención ya que en uno de los predios de terreno objeto de la compraventa, el de 416.18 metros cuadrados, ubica su residencia.
Luego de varios trámites procesales, el tribunal a quo señaló una vista para el 13 de agosto de 1996. Llegada esa fecha, las partes comparecieron, incluyendo al peticionario acompañado de su representación legal, y tuvieron la oportunidad de presentar sus respectivos argumentos respecto al cuaderno particional y a la solicitud de intervención.
El 10 de diciembre de 1996, el Tribunal de Primera Instancia emitió la sentencia parcial que nos ocupa mediante la cual confirmó y aprobó el cuaderno particional presentado por el contador-partidor y se ordenó la partición de la herencia de la causante de conformidad con lo allí expuesto. En cuanto a la solicitud de los interventores, ordenó que se procediera con la segregación de la franja de terreno de trescientos cuarenta (340) metros cuadrados y se otorgaran las correspondientes escrituras de segregación y compraventa a favor de los esposos Troche-Rodríguez, habida cuenta que todos los herederos estaban de acuerdo con dicho requerimiento de los interventores. Por tanto, quedó por resolverse lo planteado en la demanda de intervención respecto al contrato verbal otorgado por los interventores y la causante para la compra del otro predio de terreno. Inconforme con tal dictamen, el peticionario recurre ante nos alegando que erró el tribunal a quo al:
"... decidir que las objeciones al cuaderno particional estaban presentadas fuera de término.

... determinar que las objeciones, independientemente de estar fuera de término, eran inmeritorias.

... revocar una Resolución de ese mismo tribunal de fecha de 23 de febrero de 1996 y permitir la Demanda de Intervención."

Posteriormente, este Tribunal emitió una resolución en la que concedió término a los recurridos para que expresaran su posición frente al recurso. Estos han comparecido. Nos encontramos en posición de resolver.
II
Debemos, de entrada, señalar que el primer error señalado por el peticionario no fue cometido. Un examen de la sentencia parcial de la cual se nos solicita revisión nos permite concluir, sin lugar a dudas, que el tribunal a quo escuchó y consideró las objeciones al cuaderno particional presentadas por el peticionario en la vista celebrada a tales efectos el 13 de agosto de 1996. Por tanto, tal señalamiento de error no merece mayor discusión.
La controversia principal que presenta el caso de autos gira en torno a la validez del cuaderno particional presentado por el contador partidor y a la procedencia de las objeciones al mismo que presentara el peticionario.
La partición de una herencia puede hacerse de forma extrajudicial o judicial. La partición extrajudicial es la hecha por el testador, por una persona encomendada por éste o por común acuerdo de los herederos mayores de edad que tengan la libre administración de sus bienes. Art. 1011 del *735 Código Civil, 31 L.P.R.A. sec. 2877. Cuando los herederos pueden ponerse de acuerdo en cuanto a la forma de dividir la herencia, podrá realizarse la partición judicial de acuerdo a los preceptos sobre procedimientos legales especiales. Art. 1012 del Código Civil, 31 L.P.R.A. see. 2878.
El Artículo 600 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2621, dispone, en lo pertinente, que:

"Cuando un albacea o administrador estuviere en posesión de todo el caudal, y hubiese satisfecho o tuviese en su poder bienes bastantes para satisfacer las deudas y gastos de la administración, deberá pedir al Tribunal Superior el nombramiento de un contador para practicar la división de la herencia, siempre que el testador no lo haya nombrado en su testamento".

Nuestro Tribunal Supremo ha expresado que los herederos tienen la misma facultad del albacea y el administrador para pedir el nombramiento de un contador partidor en caso de que exista desacuerdo en la forma de efectuar la división de la herencia. Ab Intestato Balzac Vélez, 109 D.P.R. 670, 677 (1980).
El contador partidor es nombrado para que realice la partición de la herencia y tendrá la obligación de preparar un informe en el que "[p]resentará una relación de los bienes partióles, con el avalúo de todos los comprendidos en ella..." Art. 603 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2624. Para la preparación de este informe al contador partidor "se le darán los datos necesarios para el avalúo, liquidación, división y distribución del caudal hereditario". Art. 601 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2622. El contador partidor tiene, además, la facultad de citar a las partes e interrogar testigos y peritos para la preparación del informe particional. Art. 603 del Código de Enjuiciamiento Civil, supra.
Luego de relacionar los bienes y su avalúo, el contador partidor sugiere la distribución del caudal hereditario de manera equitativa. En la eventualidad de que en el caudal relicto haya algún bien que sea indivisible, el contador partidor podrá recomendar la venta de éste y la división del producto entre los herederos. El contador partidor entregará este informe al secretario del Tribunal y las partes tendrán ocho (8) días para presentar las objeciones que tengan al informe. Si transcurrido este término las partes no han presentado objeción al informe, el mismo será confirmado y se procederá a la partición de acuerdo a lo allí establecido. Art. 603 del Código de Enjuiciamiento Civil, supra.
El Profesor González Tejera señala que en caso de que un heredero presente objeciones al informe del contador partidor "es deber del Tribunal señalar una vista para oír las objeciones así como el parecer del contador partidor [...] En la vista, el Tribunal oirá a las partes y admitirá o desestimará las impugnaciones, confirmará o rechazará el informe o lo devolverá al contador para que someta otro enmendado". González Tejera, Efraín, Derecho Sucesorio Puertorriqueño, San Juan, P.R., Ramallo Printing Bros, Inc., 1983, Vol. I, págs. 371, 372; Artículo 603 del Código de Enjuiciamiento Civil, supra.
En el caso de autos los herederos solicitaron la designación de un contador partidor para la partición de la herencia de la señora Chacón. El contador partidor, cumpliendo con las disposiciones legales antes transcritas, presentó ante el tribunal a quo el cuaderno particional. El tribunal a quo concedió a las partes prórroga para presentar sus objeciones al mismo. El peticionario presentó ciertas objeciones al referido cuaderno. De conformidad con lo establecido por ley, el tribunal recurrido celebró una vista para escuchar las objeciones del peticionario y los argumentos del contador partidor.
De los documentos que obran en nuestro expediente, surge que el tribunal recurrido, en la vista celebrada el 13 de agosto de 1996, consideró las objeciones presentadas por el peticionario, así como escuchó y cuestionó ampliamente al contador partidor sobre la prueba que utilizó para preparar el cuaderno particional. El tribunal a quo concluyó que "[l]a argumentación sin prueba alguna de parte del heredero don Ricardo Quiñones Rivera no nos convence para que variemos la posición del señor Contador Partidor".
En el recurso ante nos el peticionario se limita a señalar, sin más, las discrepancias y objeciones que tiene respecto al cuaderno particional, las cuales resume en un sólo párrafo. Sin embargo, el *736 peticionario no alude a evidencia alguna que sustente sus objeciones. El peticionario tenía que presentar prueba ante el Tribunal de Primera Instancia que controvirtiera la información provista por el contador partidor en el cuaderno particional. No lo hizo. El peticionario no podía fundamentar sus objeciones en meras argumentaciones que no persuadieron al tribunal a quo, quien tuvo la oportunidad de escucharlo y de interrogar al contador partidor. El Tribunal de Primera Instancia, luego de escuchar a ambas partes, resolvió que procedía la aprobación del cuaderno particional preparado por el contador partidor.
Sabido es que los tribunales apelativos deben respetar las determinaciones de hechos de los tribunales de primera instancia y que no intervendrán con la apreciación de la prueba que éstos hagan en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Benitez Guzmán v. García Merced, 120 D.P.R. 302 (1990); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985); Pérez Cruz v. Hospital La Concepción, 115 D.P.R. 721 (1984). Los tribunales de primera instancia están en mejor posición para evaluar la prueba desfilada y adjudicar credibilidad pues tiene la oportunidad de ver y oír a los testigos declarar. Por ello, su apreciación merece gran respeto y deferencia. Ortiz v. Cruz Patón, 103 D.P.R. 947 (1975).
En atención a lo antes expuesto, no intervendremos con la determinación del Tribunal de Primera Instancia respecto a que las objeciones del peticionario al cuaderno particional eran inmeritorias, toda vez que no hemos encontrado que el tribunal haya actuado movido por pasión, prejuicio, parcialidad o que incurriera en error manifiesto al evaluar la prueba presentada. El peticionario no nos ha puesto en condiciones de variar tal conclusión.
Por último, el peticionario alega que erró el Tribunal de Primera Instancia al permitir la demanda de intervención instado por los esposos Frontera-Rodríguez. Argumenta que los interventores no cumplieron con los requisitos establecidos en la Regla 21 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 21. Tampoco le asiste la razón.
La Regla 21.1 de las de Procedimiento Civil, supra, establece que:

"Mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito (a) cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir; o (b) cuando el solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pudiere de hecho quedar afectado con la disposición final del pleito."

Por su parte, la Regla 21.2 de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 21.2, establece que también se podrá permitir la intervención en un pleito cuando la ley le confiera un derecho condicional al interventor o cuando "la reclamación o defensa del solicitante y el pleito principal tuvieren en común una cuestión de hecho o de derecho".
Nuestro Tribunal Supremo ha establecido que la regla que regula la intervención de una parte en un pleito debe interpretarse liberalmente. Chase Manhattan Bank v. Nesglo, Inc., 111 D.P.R. 767, 769 (1981). La Regla 21 de Procedimiento Civil, supra, expande considerablemente el ámbito de la intervención como cuestión de derecho, ya que "[e]l historial de esta Regla revela un largo esfuerzo por liberalizar las normas relativas a la intervención". Id. El análisis para determinar si procede o no la intervención de una parte en un pleito debe tomar en consideración y equilibrar los intereses en conflicto y, sobre todo, el interés cardinal en la economía procesal que permita solucionar en un sólo litigio cuestiones relacionadas entre sí, y el no menos importante, de evitar que los pleitos se compliquen innecesariamente. Id.
En el caso de autos se perfeccionó un contrato de compraventa entre los esposos Frontera-Rodríguez y la causante, señora Quiñones Chacón. No obstante, faltaban por otorgarse las correspondientes escrituras de segregación, compraventa y agrupación. El derecho de propiedad que los esposos Frontera-Rodríguez habían adquirido sobre la franja de terreno de 340 metros cuadrados que les vendió la causante podría verse afectado con la disposición final del pleito de partición y adjudicación de herencia. De la misma manera, la cuestión relativa a la compraventa del otro predio de terreno por parte de los interventores también guarda relación con el pleito sobre la partición, toda vez que existe controversia sobre si hubo un acuerdo verbal para la compraventa del terreno en *737 controversia.
Entendemos que actuó correctamente el tribunal a quo al resolver que procedía la intervención de los esposos Frontera-Rodríguez en el pleito de adjudicación y partición de la herencia de la señora Chacón. Recordemos que nuestro más Alto Foro ha enfatizado que la regla que regula la intervención de una parte en un pleito, Regla 21 de Procedimiento Civil, supra, debe interpretarse liberalmente. La determinación del tribunal recurrido refleja dicha tendencia liberalizadora.
III
Por los fundamentos antes expuestos, se expide el auto solicitado, se confirma la sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para ulteriores procedimientos compatibles con lo aquí resuelto.
Así lo pronunció y lo manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 17
1. El contador partidor presentó dos cuadernos particionales que correspondían a los dos testamentos que había otorgado la causante ya que uno de los herederos había impugnado la validez del testamento otorgado el 25 de enero de 1992. Posteriormente, el tribunal a quo emitió resolución en la que declaró la validez del referido testamento.
2. El peticionario objeta las siguientes partidas del cuaderno particional: (1) la cabida de unos predios de terreno que forman parte de un legado a favor del padre del peticionario; (2) concesiones de servidumbres a favor de herederos específicos; (3) la recomendación de que se compre la casa donde él reside; (4) valoración de la sortija que él posee por $20,000; (5) la consideración de un inmueble como propiedad exclusiva de la testadora.